IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| JANICE JOHN | : |
|  | : |
| v. | : Civil Action No. DKC 23-2749 |
|  | : |
| BLUESTONE INSOURCING SOLUTIONS, | : |
| LLC, et al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case is the partial motion to dismiss filed by Defendants Bluestone Insourcing Solutions, LLC ("Bluestone"), Audra Frizzell ("Ms. Frizzell"), and Joseph Ragland ("Mr. Ragland") (collectively, "Bluestone Defendants"). (ECF No. 11). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the partial motion to dismiss will be granted.

## I.  Background

The following facts are alleged in the complaint. Defendant Outreach Process Partners, LLC ("OPP") is a Maryland limited liability company providing federal agencies with services such as strategic communication, stakeholder engagement, and meeting support. (ECF No. 6 ¶ 16). Plaintiff Janice John ("Plaintiff") was formerly OPP's Chief Executive Officer before selling her ownership interest in OPP to Bluestone. (*See id.* ¶ 4).

In early 2019, OPP engaged in discussions with Bluestone-via Bluestone's Chief Executive Officer, Ms. Frizzell, Bluestone's Chief Financial Officer, Mr. Ragland-about Bluestone's potential acquisition of Plaintiff's ownership interest in OPP. (*Id.* ¶¶ 8, 24).[1]  Plaintiff alleges that

> [t]hrough its principals, Ms. Frizzell and Mr. Ragland, Bluestone stated it wanted to operate OPP as free-standing company after the acquisition and made emphatic assurances of its ability to grow OPP. . . . Having reviewed OPP's business, Ms. Frizzell and Mr. Ragland told [Plaintiff] that, in light of Bluestone's substantial resources, Bluestone would quadruple OPP's revenues.

(*Id.* ¶ 24).[2]  According to Section 2 ("Section 2") of the resulting purchase agreement (the "Purchase Agreement"),

> OPP and Bluestone were required to pay [Plaintiff] 50% of OPP's earnings before interest, taxes, depreciation, and amortization (EBITDA) during the [two-year period from][] June 17, 2019 until June 17, 2021. If [Plaintiff] received $850,000 during that two-year period, OPP's and Bluestone's payment obligation would be satisfied. Conversely, if [Plaintiff] received less than $850,000 during that two-year period, Bluestone was entitled to elect to either (a) immediately pay [Plaintiff] an amount sufficient to bring total payments to [Plaintiff] to $850,000 or (b) pay [Plaintiff] 50% of OPP's monthly EBITDA during the next

---

[1] The complaint is misnumbered, such that it contains two different allegations labeled as paragraph 24. (*Compare* ECF No. 6, at 9-10 ¶ 24, *with id.* at 10 ¶ 24).  The citation to paragraph 24 refers to paragraph 24 on pages 9 through 10.

[2] This citation to paragraph 24 refers to paragraph 24 on pages 9 through 10.

two-year period -- June 17, 2021 until June 17, 2023.

(*Id.* ¶ 24).[3]   Section 2(a) of the Purchase Agreement ("Section 2(a)") also requires OPP and Bluestone to (1) "maintain detailed records identifying all components necessary to calculate payments due;" (2) "compute EBITDA after the end of each month;" (3) "no later than fifteen days after the end of the month, prepare and deliver to [Plaintiff] [a] detailed statement setting forth the EBITDA calculation for the applicable month; and" (4) "pay [Plaintiff] within forty-five days after the end of the applicable month."   (*Id.* ¶ 25).   Section 2(d) of the Purchase Agreement ("Section 2(d)") provides that until [Plaintiff] is fully paid according to Section 2, OPP and Bluestone shall (1) "operate the business in good faith and in accordance with historically sound operating practices;" (2) "employ an individual with senior strategic communications expertise and experience to replace [Plaintiff];" (3) not operate [OPP] in a manner that is intended to cause, or the effect of which is to cause, any payment hereunder to be reduced in amount or not to be earned; and" (4) "not divert . . . sales of products or services, of [OPP][.]"   (*Id.* ¶ 26) (alterations in original) (internal citations omitted).   Section 6 of the Purchase Agreement ("Section 6") states that Plaintiff would be compensated for her work as OPP's independent contractor,

---

[3] This citation to paragraph 24 refers to paragraph 24 on page 10.

post-closing until August 17, 2019, "to train her replacement and otherwise provide transition services." (*Id.* ¶¶ 27, 44).

Plaintiff alleges that Bluestone Defendants did not intend to perform the obligations of the Purchase Agreement at the time of its execution. (*Id.* ¶ 28). After the June 17, 2019 closing of the Purchase Agreement, Bluestone did not "employ an individual with senior strategic communications expertise and experience" to replace Plaintiff until September 2019. (*Id.* ¶¶ 29-30). In addition, Bluestone failed to return communications from OPP's customers and partners, or follow up on any business leads Plaintiff relayed to OPP. (*Id.* ¶ 30). Nor did Bluestone submit any proposals to customers on behalf of OPP between June 17, 2019 to September 30, 2019, despite the fact that federal contract opportunities are largely awarded between July and September each year. (*Id.* ¶ 31). Instead, Bluestone submitted proposals on behalf of itself and another Bluestone affiliate, using OPP's ISO 9001 Quality Certification.[4] (*Id.* ¶ 32). After June 17, 2019, Bluestone did not update OPP's website and instead eliminated it entirely in the spring of 2021. (*Id.* ¶ 33). Pursuant to the Purchase Agreement, Plaintiff invoiced OPP for post-closing consulting services, but OPP never paid Plaintiff. (*Id.* ¶ 34).

---

[4] The ISO 9001 Quality Certification was issued to OPP "under the International Quality System Standard with a scope of 'applying technology tools, data analytics and strategic communications to improve performance.'" (ECF No. 6 ¶ 21).

Moreover, Bluestone has "neither (a) within fifteen days after the end of each month, prepared and delivered to [Plaintiff] a detailed statement setting forth the EBITDA calculation for the applicable month, nor (b) paid [Plaintiff] within forty-five days after the end of each month."  (*Id.* ¶ 35).

On September 7, 2023, Plaintiff filed a complaint (the "Complaint") in the Circuit Court for Montgomery County.  (ECF No. 6).  In Count I, Plaintiff alleges that Bluestone, OPP, and Ms. Frizzell breached Section 2, including Sections 2(a) and 2(d).  (*Id.* ¶¶ 37-42).  In Count II, Plaintiff alleges that OPP breached Section 6.  (*Id.* ¶¶ 43-47).  In Count III, Plaintiff alleges that Bluestone Defendants engaged in fraud and intentional misrepresentation by inducing Plaintiff to enter into the Purchase Agreement.  (*Id.* ¶¶ 48-55).  On October 11, 2023, Defendants removed this case to this court based on diversity jurisdiction.  (ECF No. 1).  On November 13, 2023, Bluestone Defendants filed the presently pending motion to dismiss Count III.  (ECF No. 11).  On December 4, 2023, Plaintiff responded in opposition.  (ECF No. 16).  On December 22, 2023, Bluestone Defendants replied.  (ECF No. 19).

## II.  **Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must

accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[ ] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

Fraud claims are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).

## III. Analysis

Plaintiff alleges that Bluestone Defendants "induce[d] [Plaintiff] to enter into the [Purchase] Agreement[]" by

6

"affirmatively represent[ing] . . . that Bluestone would report to and pay [Plaintiff] as [Section] 2(a) required" and adhere to the provisions in Section 2(d).  (ECF No. 6 ¶¶ 50-51).  Plaintiff states that she "relied on those misrepresentations[,]" "had a right to rely on those misrepresentations, and would not have transferred her ownership interest in the absence of those misrepresentations."  (*Id.* ¶ 54).  Plaintiff also alleges that "[a]s a result of being fraudulently induced to enter into the [Purchase] Agreement, [she] has incurred and continues to incur substantial monetary and non-monetary damages."  (*Id.* ¶ 55).

Bluestone Defendants argue that Plaintiff has not stated a fraud claim with adequate specificity.  (ECF No. 11-1, at 6).  Specifically, Bluestone Defendants contend that Plaintiff has failed to "identify the who, what, when, where or how of any alleged misrepresentations[.]" (*Id.* at 8).  In addition, Bluestone Defendants maintain that Plaintiff has not provided a sufficient factual predicate from which the court may draw a strong inference of fraudulent intent.  (*Id.*).  Plaintiff contends otherwise. (*See* ECF No. 16, at 15-17).

In order to state a claim for fraud and intentional misrepresentation, a plaintiff must establish the following elements: "(1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be

7

equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation." *First Union Nat. Bank v. Steele Software Sys. Corp.*, 154 Md.App. 97, 134 (2003) (quoting *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982)). "[W]hen one may be induced by fraud to enter into a contract, the tort in that instance cannot be said to arise out of the contractual relationship.  It is the tortious conduct which conversely induces the innocent party to enter into the contractual relationship." *Wedeman v. City Chevrolet Co.*, 278 Md. 524, 529 (1976), *abrogated on other grounds by Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420 (1992); *see also Sass v. Andrew*, 152 Md.App. 406, 432 (2003) (quoting *Wedeman*, 278 Md. at 529).

Under Rule 9(b), a plaintiff advancing a fraud claim must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citing 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).  "These facts are

often 'referred to as the who, what, when, where, and how of the alleged fraud.'" *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

Plaintiff has not met Rule 9(b)'s heightened pleading standard.  In Count III, Plaintiff fails to identify a single pre-contractual statement-apart from the provisions in Sections 2(a) and 2(d) that Bluestone Defendants allegedly breached-constituting a misrepresentation inducing Plaintiff to enter into the Purchase Agreement.  (*See* ECF No. 6 ¶¶ 48-55).  As Bluestone Defendants contend, "Count III simply recasts [Plaintiff]'s breach of contract claim and couples it with the general assertion that [Bluestone Defendants] . . . never intended to perform [the terms of the Purchase Agreement][,]" but "[f]ailure to perform a contract does not convert a breach of contract into fraud."  (ECF No. 11-1, at 6) (citing *Kwang Dong Pharm. Co. v. Han*, 205 F.Supp.2d 489, 495 (D.Md. 2002)).

Indeed, as Plaintiff contends, Plaintiff has identified three pre-contractual misrepresentations by the Bluestone Defendants-albeit elsewhere in the Complaint.  Plaintiff notes that

> [i]n the months leading up to the June 17,
> 2019 [Purchase] Agreement, Ms. Frizzell and
> Mr. Ragland: (a) specifically stated that
> Bluestone wanted to operate OPP as a free-
> standing company after the acquisition; (b)
> made emphatic assurances of Bluestone's

> ability to grow OPP; and (c) having reviewed
> OPP's business, told [Plaintiff] that, in
> light of Bluestone's substantial resources,
> Bluestone would quadruple OPP's revenues.

(ECF No. 16, at 15) (citing ECF No. 6 ¶ 24).[5]  Such statements, however, are not actionable.  "A 'false representation' [in the context of a fraud claim] is a statement, conduct, or action that intentionally misrepresents a material fact." *Sass v. Andrew*, 152 Md.App. 406, 429 (2003) (quoting *Parker v. Columbia Bank*, 91 Md.App. 346, 359, *cert. denied*, 327 Md. 524 (1992); *Snyder v. Herbert Greenbaum & Associates*, 38 Md.App. 144, 148 (1977)). "[P]redictive statements [are] material where the circumstances indicate to the addressee that the speaker has a *factual* basis for his predictions so that the *existence of facts* is implied by the representations." *Ward Dev. Co. v. Ingrao*, 63 Md.App. 645, 656 (1985) (emphasis added).  For instance, "a company's predictions regarding its future business operations may be actionable as fraud or negligent misrepresentation if, at the time they were made, the company knew that it would not or could not perform as predicted." *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 74 (2002) (citing *Miller v. Fairchild Indus., Inc.*, 97 Md.App. 324, 342–43, *cert. denied*, 333 Md. 172 (1993)).  Nevertheless, as explained in *Baney Corp. v. Agilysys NV, LLC*, 773 F.Supp.2d 593, 608 (D.Md. 2011),

---

[5] This citation to paragraph 24 refers to paragraph 24 on pages 9 through 10.

> Maryland law distinguishes between statements that relate to material facts—which may give rise to cognizable claims—and vague generalities, statements of opinion, or puffery—which are deemed non-cognizable. *See, e.g.*, *McGraw v. Loyola Ford, Inc.*, 124 Md.App. 560, [582 (1999)] (holding that statements that amount to "indefinite generality," "puffing" and "sales talk" cannot give rise to a fraud claim because such statements are "'offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable [person] would rely'" (quoting W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 109 at 757 (5th ed. 1984))); *McAleer v. Horsey*, 35 Md. 439, [452] (1872) ("[F]raud must be material to the contract or transaction which is to be avoided, for if it relate to another matter or to this only in a trivial and unimportant way, it affords no ground for the action of the Court.").

Ms. Frizzell and Mr. Ragland's statement about Bluestone's intention to operate OPP as a free-standing company is not false because Plaintiff only alleges that Bluestone "intentionally mismanage[d]" OPP-not that Bluestone did not operate OPP as a free-standing company. (ECF No. 6 ¶ 29). Additionally, Ms. Frizzell and Mr. Ragland's statements about growing OPP and increasing OPP's revenue constitute inactionable puffery because they merely present indefinite and optimistic predictions of future performance devoid of any concrete *facts* about Bluestone's actions with respect to OPP. More importantly, Plaintiff fails to attribute each alleged misrepresentation to an *individual* speaker, nor does Plaintiff specify *where* the alleged misrepresentations were made. *See Bakery & Confectionary Union*, 888 F.3d at 705

11

(holding that a party "broadly accus[ing]" various parties of lying without "specify[ing] who it was accusing of which specific misrepresentations" did not plead fraud with particularity). Because Plaintiff does not allege false representations with sufficient specificity, Plaintiff has failed to state a claim for fraud.  Thus, it is unnecessary to address the parties' arguments regarding whether Plaintiff has alleged enough facts to support a strong inference of fraudulent intent.  Count III of the Complaint will be dismissed.[6]

**IV.  Conclusion**

For the foregoing reasons, Defendants' partial motion to dismiss will be granted.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[6] Plaintiff does not request leave to amend or intimate that other facts could be alleged that would overcome the defects found in the current complaint.